**VOLKSWAGEN OF AMERICA, INC., Appellant,**

v.

**Andrew RAMIREZ, Sr., Appellee.**

**No. 13–01–196–CV.**

Court of Appeals of Texas, Corpus Christi.

May 9, 2002.

---

Alene R. Levy, Kent Geoffrey Rutter, Lynne Liberato, Haynes & Boone, L.L.P., Timothy R. Bersch, Paxon & Associates, Houston, C. Thomas Schweizer, Ian Ceresney, Herzfeld & Rubin, P.C., New York, NY, Eduardo R. Rodriguez, Rodriguez, Colvin & Chaney, Brownsville, for appellant.

Roger Reed, David H. Hockema, Edinburg, David M. Gunn, Bellaire, Kevin Dubose, Houston, for appellee

BEFORE: Chief Justice VALDEZ and Justices HINOJOSA and RODRIGUEZ.

## OPINION

ROGELIO VALDEZ, Chief Justice.

This is a product liability case. A Volkswagen Passat driven by Haley Sperling crossed the median of U.S. Highway 83 and collided with a vehicle driven by Diana Alice Ramirez–Garza and occupied by her fourteen year old daughter, Jacquelyn Renee Guerra. Diana Alice Ramirez–Garza was killed in the collision and her daughter suffered severe injuries. Andrew Ramirez, Sr., Ester Ramirez, and Andrew Ramirez, Jr., as next friend of Jacquelyn Renee Guerra and as administrator of the estate of Diana Alice Ramirez–Garza, sued Volkswagen of America, Inc., alleging that the accident was caused by a defective wheel assembly on Sperling's Passat.

The initial trial of this matter ended with a jury verdict in favor of Volkswagen; however, the trial court granted appellees a new trial "in the interest of justice." Upon retrial, the jury found that the Volkswagen Passat involved in the collision was defective and Volkswagen's negligence proximately caused the automobile accident resulting in appellees' injuries. The trial court entered judgment on the verdict, awarding appellees $17,237,664.38. Volkswagen appeals this judgment by seven issues. We affirm.

*Qualification of Juror*

In its first issue, Volkswagen contends that the jury's verdict cannot support the

judgment because one of the ten jurors was disqualified from serving on the jury. Almost thirty years before the trial of the instant case, the juror had pleaded guilty to a felony, successfully completed probation, and obtained a dismissal of the charges against him. In the instant case, this juror failed to indicate on his questionnaire that he had been an accused in a felony criminal case. Volkswagen discovered the juror's conviction after trial and made it one basis for its motion for new trial. Volkswagen argues that the juror was unqualified to serve on the jury. Volkswagen further argues that the statute authorizing dismissal of the charges against the juror is unconstitutional because it effectively "authorizes Texas courts to grant pardons" despite the fact that the Texas Constitution reserves that right to the Governor.

■ The trial court's ruling on a motion for new trial will not be disturbed on appeal in the absence of an abuse of discretion. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex.1984). It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles, or to rule without supporting evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998).

Under the government code, a prospective juror must not have been convicted of a felony. *See* TEX.GOV'T CODE ANN. § 62.102(7) (Vernon 1998). However, in the instant case, the juror in question had received a probation order providing that:

his plea of guilty in this cause is hereby ordered withdrawn, and the indictment is ordered dismissed. It is the further order of this Court that the defendant

... is hereby discharged from the terms, penalties, and disabilities of the said offense for which he was convicted in this cause and from the Probation which was heretofore granted him, and that the defendant be in all things discharged and released from the jurisdiction of this court for the offense for which he was convicted in this cause.

This order was entered under the authority of article 42.12, section 20, of the code of criminal procedure, under which a court may set aside a guilty verdict or permit the defendant to withdraw his plea of guilt, and thereafter "shall dismiss the accusation, complaint, information or indictment against the defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted or to which he had pleaded guilty." TEX.CODE CRIM.PROC. ANN. 42.12, § 20 (Vernon Supp.2002).[1]

In 1996, the Waco court of appeals observed that, "[u]ntil recently," Texas courts had "unanimously" held that article 42.12, section 20, operated to restore to a convicted felon his ability to sit on a jury once he successfully completed the terms of his probation. *Hoffman v. State*, 922 S.W.2d 663, 668 (Tex.App.—Waco 1996, pet. ref'd) (citing *Walker v. State*, 645 S.W.2d 294, 295 (Tex.Crim.App.1983); *Payton v. State*, 572 S.W.2d 677, 678–79 (Tex.Crim.App.1978) (on reh'g), *overruled on other grounds*, *Jones v. State*, 982 S.W.2d 386 (Tex.Crim.App.1998); *Smith v. State*, 859 S.W.2d 463, 464 (Tex.App.—Fort Worth 1993, pet. ref'd); *Day v. State*, 784 S.W.2d 955, 956 (Tex.App.—Fort Worth 1990, no pet.)). The Waco court recognized, but refused to follow, *R.R.E. v.*

1. The trial court entered its dismissal pursuant to an earlier version of this article. *See* act of May 27, 1965, 59th Leg., R.S.., ch. 722, § 7, 1965 Tex.Gen.Laws 317, 492 (amended 1983, 1989, 1993). However, subsequent changes have not been substantive, therefore, all references herein are to the current version of this article. *See* TEX.CODE CRIM. PROC.ANN. art. 42.12, § 20 (Vernon Supp. 2002).

*Glenn,* 884 S.W.2d 189 (Tex.App.—Fort Worth 1994, writ denied), which held that article 42.12, section 20, unconstitutionally infringed upon the executive branch's exclusive authority to restore a convicted felon's civil rights. *Hoffman,* 922 S.W.2d at 668; *R.R.E.,* 884 S.W.2d at 192–93; *see also Dempsey v. Beaumont Hosp., Inc.,* 38 S.W.3d 287, 289–90 (Tex.App.—Beaumont 2001, pet. dism'd by agr.) (citing *Glenn* in holding that convicted felon was constitutionally disqualified from jury service).[2]

As an initial matter, we conclude that Volkswagen's argument that article 42.12, section 20 is unconstitutional lacks merit. Article IV, section 11(b) of the Texas Constitution grants the exclusive power to grant a pardon to the executive branch of the government; however, the district courts of Texas have the constitutional and statutory authority to dismiss charges against a defendant from the moment of indictment until the time the defendant completes the terms of his probation. *Hoffman,* 922 S.W.2d at 668. This authority differs from the constitutional authority of the executive branch to pardon a criminal defendant after conviction. *See id.* Article 42.12, section 20 does not grant the judiciary and legislature greater authority than allowed by the Texas Constitution. *Id.; see Ex parte Giles,* 502 S.W.2d 774, 785 (Tex.Crim.App.1973) (earlier version of art. 42.12, § 20 enacted pursuant to TEX. CONST. art. IV, § 11A); *Baker v. State,* 70 Tex.Crim. 618, 158 S.W. 998, 1003 (1913) (affirming constitutionality of earlier version of art. 42.12, § 20). We conclude that article 42.12, section 20 does not violate the Texas Constitution as an infringement on the executive right to grant a pardon. We refuse to follow

*Glenn* or *Dempsey* to the extent that these cases may hold otherwise.

Having concluded that article 42.12 of the Texas Code of Criminal Procedure is constitutional, we next determine whether a dismissal under this provision operates to allow an individual with a prior felony conviction to serve on a jury. Both the Texas Supreme Court and the Texas Court of Criminal Appeals have recently considered the extent to which a dismissal under article 42.12 can relieve the penalties and disabilities associated with a felony conviction.

The Texas Supreme Court addressed the effect of article 42.12, section 20 with regard to the right of a convicted felon to carry a concealed handgun. *See Tune v. Tex. Dep't of Pub. Safety,* 23 S.W.3d 358 (Tex.2000). In *Tune,* although Tune's prior felony conviction had been dismissed under article 42.12, the court nevertheless concluded that this conviction prevented Tune from obtaining a permit to carry a concealed handgun. *Id.* at 363–64. In reaching this conclusion, the court noted that the Concealed Handgun Act (the "Act") provided an explicit definition of the term "convicted." Under the Act, a person is "convicted" after an adjudication of guilt is entered against him whether or not his sentence is subsequently probated and he is discharged from community supervision. *Id.* at 363. Tune had been "convicted" according to this definition. The court thus stated that:

> If the Handgun Act didn't include a specific definition of the term "convicted," then the inability to obtain a concealed-handgun license might be one of the penalties and disabilities removed when the district court dismissed Tune's

2. We note that *Dempsey* is distinguishable from *Glenn* and the instant case. The juror in *Dempsey* had been convicted of a state jail felony which rendered him ineligible for a

dismissal of the conviction under article 42.12. *Dempsey,* 38 S.W.3d at 289. Moreover, the parties therein conceded that the juror was disqualified. *See id.* at 289 n. 4.

indictment. But the Act does include a specific definition. And, for obvious reasons, the Legislature may wish to keep concealed handguns out of the hands of persons who have been convicted of a felony, even if those persons satisfactorily complete community supervision.

*Id.* at 364 (footnote omitted). In reaching its conclusion, the Texas Supreme Court reasoned that the Legislature could expressly provide in article 42.12 that any general penalties and disabilities resulting from a conviction are lifted when a person is discharged from community supervision and the indictment is dismissed, and yet retain certain specific restrictions on those who have previously been convicted of felonies. *Id.* In the instant case, we note that the government code contains no such restrictive language governing the meaning of a "conviction" for the purposes of jury service. *See* TEX.GOV'T CODE ANN. § 62.102(7) (Vernon 1998).

Recently, the Texas Court of Criminal Appeals held that a felony conviction set aside under article 42.12 is not a felony conviction for purposes of enhancement under section 46.04(a) of the Texas Penal Code, making it an offense for a convicted felon to possess a firearm. *See Cuellar v. State,* 70 S.W.3d 815, 820 (2002). According to *Cuellar,* "a person whose conviction is set aside pursuant to an Article 42.12, § 20, order is not a *convicted* felon." *Id.*

The analysis and reasoning employed by the Texas Court of Criminal Appeals in *Cuellar* applies equally to the instant case. The *Cuellar* court specifically noted that although article 42.12, section 20 provides for the removal of "all penalties and disabilities" upon dismissal, it also contains express exceptions to the removal of disabilities. *See id.* Under article 42.12, section 20, subsection one, if the discharged person is subsequently convicted of another criminal offense, the previously dis-

missed former felony conviction will resurrect itself and be made known to the trial judge. TEX.CODE CRIM.PROC.ANN. art. 42.12, § 20(a)(1) (Vernon Supp.2002). Under subsection two, if the discharged person is applying for a license to run a child care facility or currently has such a license, the Texas Department of Human Services, in issuing, renewing, denying, or revoking such a licence, may consider the fact that the person had previously received community supervision. *See id.* at § 20(a)(2). According to *Cuellar,* the "Legislature could add other exceptions if it so chooses," and otherwise, the clear language of article 42.1, section 20 governs. *Cuellar,* at 820.

Following the analyses employed by the Texas Supreme Court and the Texas Court of Criminal Appeals, we conclude that a dismissal of a conviction under article 44.12, section 20 operates to restore the right of a convicted felon to serve on a jury. With certain express exceptions, the Legislature has provided that a dismissal under this section operates to release the convicted felon of "all penalties and disabilities." *See* TEX.CODE CRIM.PROC.ANN. art. 42.12, § 20 (Vernon Supp.2002). The Legislature did not provide that the ability to serve on a jury is an exception to this rule, and thus, the "clear language" of article 42.12, section 20 governs. *Id.*

We overrule Volkswagen's first issue.

### *Hearsay Evidence*

 In its second issue, Volkswagen argues that the trial court's admission of inadmissible hearsay evidence from a "mystery" witness constituted reversible error. The trial court allowed appellees to introduce the videotaped statement of an eyewitness to the accident who was interviewed by a local news crew at the accident scene. The witness refused to identify himself, and his face was not shown on

camera. According to this witness, "The tire blew up and it crossed the median and it hit the car that was headed from over there towards over here." This witness was never located or deposed.

■ Whether to admit or exclude evidence is a matter committed to the trial court's sound discretion. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (2001). To reverse a judgment based on a claimed error in admitting or excluding evidence, a party must show that the error probably resulted in an improper judgment. TEX.R.APP.P. 61.1; *Interstate Northborough P'ship*, at 220. Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. *Interstate Northborough P'ship*, at 220.

As an initial matter, we are not persuaded that it was error to admit the videotaped testimony. First, the videotaped statement did not constitute hearsay. The testimony was not offered to prove the truth of the matter asserted that "the tire blew up." *See* TEX.R.EVID. 801(d) (hearsay is a statement offered in evidence to prove the truth of the matter asserted).

Moreover, the trial court may have admitted the witness's statement as an excited utterance. According to rule 803(2) of the Texas Rules of Evidence, an excited utterance is a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. *See* TEX.R.EVID. 803(2). The witness's statement was videotaped immediately following the collision while the emergency personnel at the scene were still attempting to extricate the lone surviving victim from her vehicle. In fact, the videotape includes background noise attributed to the machinery utilized by the emergency crew.

■ Volkswagen argues that the videotape shows that the witness was not "excited or upset," and further argues that the statement was given "well after the event." However, the fact that the witness's comments were made in response to questions, or that the comments were separated by a period of time from the startling event are mere factors to consider in determining whether the statement is admissible as an excited utterance. *See Salazar v. State*, 38 S.W.3d 141, 153 (Tex.Crim.App.2001). The critical determination is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event. *Id.; Guerra v. State*, 942 S.W.2d 28, 32 (Tex.App.—Corpus Christi 1996, pet. ref'd). In the instant case, the witness's statement was memorialized by a videotape, and thus the trial court had the singular opportunity to judge whether the witness giving the statement was under the "stress of excitement" caused by the accident. Given the context in which the statement was made, we conclude that the trial court did not abuse its discretion in admitting the videotape as an excited utterance.

■ As a more fundamental matter, even if we were to conclude that the trial court committed error in admitting the videotaped statement, appellant has failed to show that the error probably resulted in an improper judgment. The appellees' entire case does not rest on the admission of the videotaped statement, and thus it was in the trial court's discretion to admit it. *Interstate Northborough P'ship*, at 220. The appellees' theory of liability relates to the structure of the wheel bearing assembly, that is, the tire's separation from the car, and does not address any kind of tire defect. In fact, the tire itself was intact following the accident. Therefore, the wit-

ness's testimony that the tire "blew up" is irrelevant to the product liability defect alleged by appellees and found by the jury.

Volkswagen's second issue is overruled.

### Expert Testimony

By its third issue, Volkswagen contends that the trial court committed reversible error when it admitted the testimony of plaintiffs' experts. Specifically, Volkswagen argues that the testimony of the plaintiffs' experts was not reliable because Dr. Cox's opinion on defect was unsupported by independent testing or data and Mr. Walker's opinion on causation made no sense to Volkswagen. Based on these arguments, Volkswagen contends that the jury's finding of negligence cannot support the judgment because there is no evidence that Volkswagen was negligent.

■ The "trial court has broad discretion to determine admissibility" of expert testimony and the appellate court should "reverse only if there is an abuse of that discretion." *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 499 (Tex.2001); *see also Keeton v. Carrasco,* 53 S.W.3d 13, 25 (Tex. App.—San Antonio 2001, pet. denied). An abuse of discretion occurs only when a trial court's decision is "arbitrary, unreasonable, and without reference to guiding rules and principles." *Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997).

■ The Texas Supreme Court recently confirmed the key principle and guiding rule applicable to the decision whether to admit or exclude expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of opinion or otherwise.

*Helena Chem.,* 47 S.W.3d at 499 (quoting Tex.R.Evid. 702); *see Spivey v. James,* 1 S.W.3d 380, 382 (Tex.App.—Texarkana 1999, pet. denied). To meet this test, "the expert must be qualified," and "the testimony must be relevant and be based on a reliable foundation." *Helena Chem.,* 47 S.W.3d at 499.

■ When an expert's qualifications have been challenged, "deciding if an expert is qualified" requires the trial court to "ensure that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Id.* (quoting *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 719 (Tex.1998); *Broders v. Heise,* 924 S.W.2d 148, 152 (Tex.1996)); *see also Hall v. Huff,* 957 S.W.2d 90, 99–101 (Tex.App.—Texarkana 1997, pet. denied). In this case, however, Volkswagen does not challenge the qualifications of either disputed expert.

■ When the relevance of expert testimony has been challenged, "The question under Rule 702 is not whether the jurors know *something* about this area of expertise but whether the expert can expand their understanding of this area in any way that is relevant to the disputed issues in the trial." *Glasscock v. Income Prop. Servs., Inc.,* 888 S.W.2d 176, 180 (Tex. App.—Houston [1st Dist.] 1994, writ dism'd by agr.); *see also Wichita County v. Hart,* 989 S.W.2d 2, 12 (Tex.App.—Fort Worth 1999, pet. denied). Volkswagen does not challenge the relevance of the disputed expert testimony.

■ When the reliability of an expert's testimony is challenged, the trial court must "gauge" the expert's reliability by ensuring "that the opinion comports with applicable professional standards out-

side the courtroom."[3] *Helena Chem.*, 47 S.W.3d at 499 (quoting *Gammill*, 972 S.W.2d at 725–26); *see also Southland Lloyd's Ins. Co. v. Tomberlain*, 919 S.W.2d 822, 827–28 (Tex.App.—Texarkana 1996, writ denied). The trial court is not to determine whether the expert's conclusions are correct, but only whether the analysis used to reach those conclusions is reliable. *Gammill*, 972 S.W.2d at 728. A trial court's gatekeeping function under rule 702 has not replaced cross-examination as the "traditional and appropriate" method for attacking "shaky but admissible" evidence. *See id.*

 Volkswagen's specific challenge with regard to Dr. Edward Cox asserts that his expert testimony was unsupported by independent testing. In *General Motors v. Sanchez*, General Motors raised a similar complaint that the expert did not test his automotive design theory, and the Texas Supreme Court held "the plaintiffs did not have to build and test an automobile transmission to prove" their design defect case. *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 592 (Tex.1999). Instead, the *Sanchez* court held that "testimony about the engineering principles underlying" the expert's automotive engineering testimony was sufficient. *Id.* at 591. In this case, Dr. Cox offered a complete explanation of the engineering principles underlying his opinions to the satisfaction of the trial court and the jury. This Court's review of the record confirms that Dr. Cox's testimony, which explains how the engineering principles and the evidence both support his opinions, meets the reliability standards under the *Helena Chemical* and *Gammill* cases. Moreover, if we were to accept Volkswagen's argument that Dr. Cox needed testing to support his opinions, we note that Dr. Cox's opinions were supported by Volkswagen's testing, as well as the lateral and vertical force testing he and Ron Walker conducted in this case.

 The remainder of Volkswagen's challenge to Dr. Cox's expert testimony either faults Dr. Cox's explanation of how the Volkswagen Passat became defective or questions Dr. Cox's conclusions rather than his methodology or his data. First, we note that proof of a products liability claim does not require proof of how the product became defective:

> Strict liability does not require a specific showing of how the product became defective. In a classic case in which a consumer found a putrefied big toe in a plug of chewing tobacco, the consumer was not required to prove how the big toe got there or whose toe it was. That is the nature of products liability. This rule evolved because a consumer is not in a position to know the manufacturing process and how the defect might have occurred.... The rule that a consumer does not have to show specifically how a product became defective is also based on a consumer's right to receive a safe product from the manufacturer.

*Sipes v. Gen. Motors Corp.*, 946 S.W.2d 143, 155 (Tex.App.—Texarkana 1997, writ denied) (citations omitted); *see also Ford*

---

**3.** The Texas Supreme Court has also identified six nonexclusive *Robinson* factors that may be considered when evaluating testimony based on the type of theories typically subjected to peer review and rate-of-error analysis, but the court has since "recognized that the *Robinson* factors may not apply to certain testimony." *See Helena Chem.*, 47 S.W.3d at 499 (citing *Gammill*, 972 S.W.2d at 726); *E.I.*

*du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex.1995) (including factors concerning "peer review publication" and "potential rate of error" which *Gammill* recognized "simply do not fit" when reviewing engineering expert testimony). This case is like *Gammill* in that it involves engineering testimony that should not measured against the *Robinson* factors.

*Motor Co. v. Gonzalez,* 9 S.W.3d 195, 199 (Tex.App.—San Antonio 1999, no pet.). Second, while a party may challenge the reliability of an expert's methodology or data, challenges that merely attack the expert's conclusions are improper and invasive of the jury's province. *See Gammill,* 972 S.W.2d at 728.

Volkswagen's challenge concerning Ron Walker contends that his expert opinions "simply make no sense" to Volkswagen. Volkswagen's contention that Mr. Walker's testimony "simply makes no sense" is an improper attack on his conclusions. *Cf. Gammill,* 972 S.W.2d at 728. Rather, the proper way to exclude such testimony would be to attack the method by which the expert reached those absurd conclusions, rather than attacking the conclusions themselves. *See id.*

▆ In this case, Mr. Walker's testimony made sense to the trial judge acting as gatekeeper and made sense to the jury. In our system of justice, the trial judge is entrusted as gatekeeper of the evidence, the jury is entitled to respect and deference, and the jury's role as fact finder is treated with sanctity and protected by the Texas Constitution. *See, e.g., Herbert v. Herbert,* 754 S.W.2d 141, 143–44 (Tex.1988) (discussing sanctity, deference, and respect for jury's function); *see also Sanchez,* 997 S.W.2d at 590 (discussing trial court's role as gatekeeper). Volkswagen's argument that Mr. Walker's testimony is comparable to testimony that "the world is flat" deprives the jury of its proper respect and deference. *Cf. Coxson v. Atl. Life Ins. Co.,* 142 Tex. 544, 179 S.W.2d 943, 945 (1944) ("It is peculiarly within the province of the jury to weigh opinion evidence, taking into consideration the intelligence, learning, and experience of the witness and the degree of attention which he gave the matter."). This Court's review of the record confirms that Mr. Walker's testimony

meets the reliability standards under the *Helena Chemical* and *Gammill* cases. Accordingly, we overrule Volkswagen's third issue.

### Cumulative Error

▆ In its fourth issue, Volkswagen contends that the cumulative effect of the trial court's erroneous evidentiary rulings mandates a new trial.

▆ Multiple errors, even if considered harmless if taken separately, may result in reversal and remand for a new trial if the cumulative effect of such errors is harmful. *Weidner v. Sanchez,* 14 S.W.3d 353, 377 (Tex.App.—Houston [14th Dist.] 2000, no pet.); *Brown v. Hopkins,* 921 S.W.2d 306, 319 (Tex.App.—Corpus Christi 1996, no writ); *Fibreboard Corp. v. Pool,* 813 S.W.2d 658, 695 (Tex.App.—Texarkana 1991, writ denied). However, before an appellate court may reverse a judgment and order a new trial, it must determine that the error committed by the trial court was reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP.P. 44.1(a); *Weidner,* 14 S.W.3d at 377; *Fibreboard Corp.,* 813 S.W.2d at 695. An appellant must show, based on the record as a whole, that but for the alleged errors, the jury would have rendered a verdict favorable to it. *Weidner,* 14 S.W.3d at 377. We note that the cumulative error doctrine infrequently finds favor with appellate courts. *See, e.g., Crescendo Invs., Inc. v. Brice,* 61 S.W.3d 465, 481 n. 16 (Tex. App.—San Antonio 2001, pet. denied) ("Some reported cases refuse to discuss cumulative error points as redundant, while most examine the points and invariably overrule them.").

We have previously held that the trial court did not err in its evidentiary rulings, therefore, we overrule Volkswagen's fourth issue regarding cumulative error.

## *Prejudgment Interest*

In its fifth issue, Volkswagen contends that the trial court abused its discretion by awarding prejudgment interest during the "lengthy delay caused by the plaintiffs." Specifically, Volkswagen argues that the trial court abused its discretion by awarding the appellees prejudgment interest for the sixteen month period between the first and second judgments in this case. According to Volkswagen, the award of prejudgment interest "overcompensates the plaintiffs for the lengthy delay that occurred at their insistence, and it punishes Volkswagen for its success in the first trial." Volkswagen's argument that appellees delayed the entry of judgment is premised solely on the fact that appellees sought and obtained a new trial. Volkswagen neither contends that any other actions by appellees caused delay, nor does it contend that appellees unnecessarily prolonged the period of time elapsing between the first trial and the ultimate entry of judgment.

An appellate court reviews a trial court's award of prejudgment interest under an abuse of discretion standard. *J.C. Penney Life Ins. Co. v. Heinrich,* 32 S.W.3d 280, 289 (Tex.App.—San Antonio 2000, pet. denied); *European Crossroads Shopping Ctr., Ltd. v. Criswell,* 910 S.W.2d 45, 55 (Tex.App.—Dallas 1995, writ denied). The statutory prejudgment interest provisions encourage parties to seek prompt resolution of their disputes. *Purcell Const., Inc. v. Welch,* 17 S.W.3d 398, 403 (Tex.App.—Houston [1st Dist.] 2000, no pet.). Thus, a court may order that prejudgment interest does not accrue during periods of delay in the trial. TEX.FIN. CODE ANN. § 304.108(a) (Vernon Supp. 2002). In considering this issue, the court considers periods of delay caused by a defendant and periods of delay caused by a claimant. TEX.FIN.CODE ANN. § 304.108(b) (Vernon Supp.2002).

There is no authority for the proposition that pursuing one's legal remedies through requesting and receiving a new trial constitutes "delay" for the purposes of calculating an award of prejudgment interest. Therefore, we overrule Volkswagen's fifth issue.

## *Future Medical Expenses*

By its sixth issue, Volkswagen contends that the trial court erred in not reducing the amount of the award for Jacquelyn Guerra's future medical expenses to reflect the present value of these damages.

Appellees' expert life care planner, Ginny Stegent, testified that Jacquelyn Guerra's medical expenses could run as high as $39,800 per year and that Jacquelyn's life expectancy was 60 years. There was other testimony indicating that future medical expenses could range from $822,000 to $2,388,000. In contrast, Volkswagen's expert testified that the present value of the greatest amount indicated by Stegent, $2,208,000, was $1,376,000. The jury awarded appellees $2,000,000 for future medical care. Volkswagen thus argues that, as "a matter of law," there is insufficient evidence to support an award of more than $1,376,000. Volkswagen cites no authority for the proposition that damages must be reduced to reflect present value, but rather cites *C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 324 (Tex.1994), for the proposition that present value "is not simply a judgment call by the jury but a mathematical calculation."

The standard of review for an excessive damages complaint is factual sufficiency of the evidence. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406 (Tex.1998); *Brownsville Pediatric Ass'n v. Reyes,* 68 S.W.3d 184, 190–91 (Tex.App.—

Corpus Christi 2002, no pet.); *N. Am. Refractory Co. v. Easter*, 988 S.W.2d 904, 912 (Tex.App.—Corpus Christi 1999, pet. denied).

■ Texas follows the "reasonable probability" rule for future damages for personal injuries. *Fisher v. Coastal Transp. Co.*, 149 Tex. 224, 230 S.W.2d 522, 525 (1950); *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *City of San Antonio v. Vela*, 762 S.W.2d 314, 321 (Tex.App.—San Antonio 1988, writ denied). In order to recover for future medical expenses, the plaintiff must show there is a reasonable probability that such medical expenses will be incurred in the future. *Whole Foods Mkt. Southwest v. Tijerina*, 979 S.W.2d 768, 781 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

■ No precise evidence is required to support an award for future medical costs. *Id.; Pipgras v. Hart*, 832 S.W.2d 360, 366 (Tex.App.—Fort Worth 1992, writ denied). Although the preferred practice for establishing future medical costs is through expert medical testimony, there is no requirement that the plaintiff establish such costs through expert testimony. *Tijerina*, 979 S.W.2d at 781. The reasonable value of future medical care may be established by evidence of the reasonable value of past medical treatment. *Id.; see Harvey v. Culpepper*, 801 S.W.2d 596, 599 (Tex.App.—Corpus Christi 1990, no writ); *City of Rosenberg v. Renken*, 616 S.W.2d 292, 293 (Tex.Civ. App.—Houston [14th Dist.] 1981, no writ); *Thate v. Tex. & Pac. Ry. Co.*, 595 S.W.2d 591, 601 (Tex.Civ.App.—Dallas 1980, writ dism'd w.o.j.). The nature of the injury and the plaintiff's condition at the time of trial are also relevant to determining an award for future medical costs. *Tijerina*, 979 S.W.2d at 781; *Pipgras*, 832 S.W.2d at 366. The jury can make its determination of the amount of future medical expenses and care based on the injuries suffered, the medical care rendered before trial, the progress toward recovery under the treatment received, and the condition of the injured party at the time of trial. *Rosenboom Mach. & Tool, Inc.*, 995 S.W.2d at 828; *Vela*, 762 S.W.2d at 321. To sustain an award of future medical expenses, the plaintiff must present evidence to establish that in all reasonable probability, future medical care will be required and the reasonable cost of that care. *Rosenboom Mach. & Tool, Inc.*, 995 S.W.2d at 828.

■ It is within the jury's sound discretion to determine what amount, if any, to award in future medical expenses. *Id., Tijerina*, 979 S.W.2d at 781; *see Thate*, 595 S.W.2d at 601. Issues such as life expectancy, medical advances, and the future costs of products and services are, by their very nature, uncertain, and therefore, appellate courts are particularly reluctant to disturb a jury's award of these damages. *Brownsville Pediatric Ass'n*, at 191. However, this standard of review is "not so nebulous that a reviewing court will uphold a jury award for future medical expenses when there is no evidence." *Harvey*, 801 S.W.2d at 599.

■ In this case, the trial court instructed the jury to calculate what sum of money, "if paid now in cash" would compensate Jacquelyn Guerra for medical care "that in reasonable probability will be required in the future." Under *Mo. Pac. R.R. Co. v. Kimbrell*, 160 Tex. 542, 334 S.W.2d 283, 286 (1960), the jury was qualified to make the calculation regarding future medical expenses based on its common knowledge of interest rates, and no evidence of the earning power of money was required to be introduced. *See Rendon v. Avance*, 67 S.W.3d 303 (Tex.App.—

Fort Worth 2001, pet. filed). We presume the jury properly followed the trial court's instructions. *See id.*

Moreover, the evidence shows that Volkswagen's expert Ricardo Cortez based his estimation of present value by assuming a discount rate of three percent and a growth rate of only one percent. Nevertheless, Volkswagen's expert conceded that medical expenses could increase by as much as twenty to thirty times over the next sixty years, and that it is impossible to project how much expenses will actually increase. Given this testimony, the award of future medical expenses was within the jury's sound discretion. *See Rosenboom Mach. & Tool, Inc.,* 995 S.W.2d at 828; *Tijerina,* 979 S.W.2d at 781; *Thate,* 595 S.W.2d at 601.

We overrule Volkswagen's sixth issue.

### New Trial

■ In its seventh and final issue, Volkswagen argues that the trial court abused its discretion when it "arbitrarily discarded" the verdict from the first trial and granted the plaintiffs a new trial "in the interest of justice." Volkswagen contends that (1) the trial court abused its discretion by granting a new trial, (2) an order granting a new trial should be subject to review, (3) by granting a new trial without any basis or any explanation, the trial court violated Volkswagen's constitutional rights, and (4) this Court should render judgment on the verdict from the first trial in the "interest of justice."

■ An order granting a new trial within the trial court's period of plenary power is not subject to review either by direct appeal from that order, or from a final judgment rendered *after* further proceedings in the trial court. *Cummins v. Paisan Constr. Co.,* 682 S.W.2d 235, 236 (Tex.1984) (per curiam); *Vandehaar v.*

*ALC Fin. Corp.,* 25 S.W.3d 406, 410 (Tex. App.—Beaumont 2000, pet. denied).

It appears that Volkswagen has previously pursued this same issue, in this case, in the Texas Supreme Court by writ of mandamus. *See In re Volkswagen of Am., Inc.,* 22 S.W.3d 462 (Tex.2000). The supreme court denied the petition for mandamus, but Justice Hecht, joined by Justice Owen, dissented on grounds that he believed that "while trial courts should have broad discretion to grant a new trial in the interest of justice, that discretion should not be insulated from all review, and trial courts should be required to state reasons for their ruling." *Id.* at 462. The Texas Supreme Court had previously denied a similar petition for mandamus in another case, *In re BMW,* 8 S.W.3d 326 (Tex.2000), with Justices Hecht and Owen again dissenting.

■ As an intermediate appellate court, we are bound to follow the Texas Supreme Court's expressions of the law and to leave changes in the law to that court. *See Dow Chem. Co. v. Rylander,* 38 S.W.3d 741, 746 (Tex.App.—Austin 2001, pet. denied), *cert. denied,* —— U.S. ——, 122 S.Ct. 466, 151 L.Ed.2d 383 (2001); *Austin v. Healthtrust, Inc.,* 951 S.W.2d 78, 80 (Tex.App.—Corpus Christi 1997), *aff'd,* 967 S.W.2d 400 (Tex.1998). Under established law, the trial court's order granting appellees a new trial is not subject to review from a final judgment rendered after further proceedings in the trial court. *Cummins,* 682 S.W.2d at 236.

We overrule Volkswagen's seventh issue.

Having overruled each of Volkswagen's issues on appeal, the judgment of the trial court is affirmed in its entirety.