NUMBER 13-98-148-CV



COURT OF APPEALS



 THIRTEENTH DISTRICT OF TEXAS



 CORPUS CHRISTI-EDINBURG 


 


CURTIS R. WILHELM, Appellant,


v.


 

DORA ELIA FLORES, ET AL., Appellees. 
 
 

 


On appeal from the 370th District Court 


of Hidalgo County, Texas.


 


OPINION

Before The Court En Banc (1)Opinion by Chief Justice Valdez

 Santos Flores, Sr. (Flores) died from anaphylactic shock triggered by a bee sting.
Appellees, Flores's estate and his four adult children, sued appellant, Curtis Wilhelm, and
other parties. A jury found appellant liable for Flores's death. On appeal, appellant raises
nine issues. In the first six, he challenges the legal and factual sufficiency of the evidence
supporting various jury findings. In his remaining issues, he contends: (1) the trial court
erred in admitting evidence of laws pertaining to the transportation of bees; (2) the award
for pain and mental anguish was excessive; and (3) he was protected from liability by the
Good Samaritan law. Appellees raise a jurisdictional issue. We affirm, in part, and reverse
and render, in part.

I. BACKGROUND


 John Black operated a honeybee business. On September 7, 1994, Black and his
employee, Alejandro Mercado, needed help moving some beehives that Black was
purchasing from appellant. Flores agreed to help and put on a protective suit provided by
Black. 

 After stopping at appellant's house to pick up a hive, the three men went to the
property where additional hives were kept. The property was located in a remote area of
Willacy County, behind three locked gates and miles from a paved road. Appellant did not
own the land but had permission from the landowner to keep the hives there.

 After the men loaded one hive onto their truck, Flores took a break and walked into
the brush some yards away from the truck because he had the urge to defecate. He soon
returned yelling for help and staggering. The veil on his suit was open. Flores sustained
several bee stings. He suffered an anaphylactic shock reaction. Flores died before an
ambulance could reach him.

 Appellees sued Black, Joan Walsh Reichert (Black's business partner), and
appellant in the 370th District Court of Hidalgo County. Reichert settled before the case
was submitted to the jury. The jury was given a charge on general negligence and found
that the negligence of Black and appellant was the proximate cause of Flores's death. The
jury assigned fifty percent of the negligence to Black and appellant, each, and awarded
compensatory damages to appellees in the amount of $1,591,000. The jury also found
Black and appellant grossly negligent and assessed exemplary damages of $75,000
against each. Appellant brings this appeal from that judgment. Black does not appeal the
judgment. 

II. ANALYSIS

A. Jurisdiction


 Appellees raise a jurisdictional issue, which must be addressed first. See Tex. Ass'n
of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). Appellees contend
appellant has not properly invoked the jurisdiction of this Court. They argue the notice of
appeal was late. According to appellees, because appellant failed to establish that he did
not receive timely notice of the judgment, appellant was not entitled to an extension of time
for the notice of appeal. 

 We review the trial court's finding as to the date a party acquired actual knowledge
of the signing of a judgment by the standards of factual and legal sufficiency of the
evidence. Welborn Mortgage Corp. v. Knowles, 851 S.W.2d 328, 331-32 (Tex.
App.-Dallas 1993, writ denied). In a legal sufficiency analysis, we examine the record for
evidence that supports the finding, while ignoring all evidence to the contrary. Hot Shot
Messenger Serv., Inc. v. State, 798 S.W.2d 413, 415 (Tex. App.-Austin 1990, writ denied). 
If no evidence supports the finding, we look to the entire record to determine if the contrary
proposition is established as a matter of law. Id. Under a factual sufficiency analysis, we
set aside the court's finding only if it is so against the great weight and preponderance of
the evidence that it is manifestly unjust. Welborn Mortgage Corp., 851 S.W.2d at 332. 
The trial judge may accept or reject any witness's testimony in whole or in part, and we
may not substitute our judgment even if we could reach a different result. Id. 

 The record shows Judge Noe Gonzalez signed the final judgment on December 18,
1997. On February 2, appellant filed both his notice of appeal and a sworn motion
asserting that neither he nor his attorney received notice or knew that the judgment had
been signed until January 29, 1998.

 Texas Rule of Civil Procedure 306a sets forth the procedure to extend the deadlines
for post-judgment motions when a party does not receive proper notice or actual notice of
a judgment. Tex. R. Civ. P. 306a. In particular, rule 306a provides:

 4. No notice of judgment. If within twenty days after the judgment or other
appealable order is signed, a party adversely affected by it or his attorney
has neither received the notice required by paragraph (3) of this rule nor
acquired actual knowledge of the order, then with respect to that party all the
periods mentioned in paragraph (1) shall begin on the date that such party
or his attorney received such notice or acquired actual knowledge of the
signing, whichever occurred first, but in no event shall such periods begin
more than ninety days after the original judgment or other appealable order
was signed.

5. Motion, notice and hearing. In order to establish the application of
paragraph (4) of this rule, the party adversely affected is required to prove
in the trial court, on sworn motion and notice, the date on which the party or
his attorney first either received a notice of the judgment or acquired actual
knowledge of the signing and that this date was more than twenty days after
the judgment was signed. 

Tex. R. Civ. P. 306a.

 Appellant filed a motion complying with rule 306a, and the trial court held a hearing
on the motion. After hearing the evidence, the court signed an order finding that the
appellant and his attorney, Bruce Hodge, did not receive notice of the judgment until
January 29, 1998. (2) The order stated that the court received no evidence, and made no
finding, as to whether appellant's attorney, Art Martinez, received actual notice of the
judgment. Art Martinez was an attorney in the same firm with Bruce Hodge, who assisted
Mr. Hodge with the trial of the case. Mr. Martinez left Mr. Hodge's firm on or about January
30, 1998. The court's order concluded by modifying the effective date of judgment to
January 29, 1998.

 Appellees complain appellant failed to meet his burden under rule 306a because
appellant did not present any evidence that Art Martinez did not receive notice of the
judgment. Appellant responds that his attorney in charge was Mr. Hodge, and any
communication from the court should have been sent to him. See Tex. R. Civ. P. 8. We
agree. 

 Even were we to assume Mr. Martinez did receive notice of the judgment, we hold
that notice to a co-counsel, who is not the attorney in charge, is inadequate notice under
rule 8. See Tex. R. Civ. P. 8; see also Kenley v. Quintana Petroleum Corp., 931 S.W.2d
318, 321 (Tex. App.-San Antonio 1996, writ denied). Therefore, we find the evidence
legally and factually sufficient to support the trial court's findings that appellant's attorney
did not receive notice of the judgment until January 29, 1998. Accordingly, we overrule
appellees' challenge to the trial court's order extending the effective date of judgment, and
we hold this Court has jurisdiction over this case. 

B. Legal and Factual Sufficiency

1. Preservation of Error

 As a preliminary matter, appellees claim that appellant has not preserved his legal
and factual sufficiency issues for appeal.

 To preserve a legal sufficiency or no evidence issue for appeal from a jury trial, a
party must use one of the following methods: (1) motion for instructed verdict; (2) objection
to the submission of the issue to the jury; (3) motion to disregard jury's answer; (4) motion
for judgment notwithstanding the verdict; or (5) motion for new trial specifically raising the
complaint. T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 220 (Tex. 1992);
Arroyo Shrimp Farm, Inc. v. Hung Shrimp Farm, Inc., 927 S.W.2d 146, 148-49 (Tex.
App.-Corpus Christi 1996, no writ). A complaint challenging the factual sufficiency of the
evidence to support a jury finding or the excessiveness of the damage award must be
urged in a motion for new trial in order to preserve the issue for appeal. Tex. R. Civ. P.
324(b); Cecil v. Smith, 804 S.W.2d 509, 510 (Tex. 1991); Arroyo Shrimp Farm, 927 S.W.2d
at 149. 

 Here, appellant raised these issues numerous times: at the close of plaintiffs'
evidence by moving for a directed verdict; at the close of all the evidence by moving for an
instructed verdict; at the charge conference by objecting to the proposed jury charges; after
the verdict by moving to disregard the jury's findings and for judgment notwithstanding the
verdict; and by post-judgment motion for a new trial. We hold the issues are preserved for
our review.

2. Standards of Review


 A "no evidence" standard of review is applied when the party not bearing the burden
of proof at trial challenges a finding of fact by arguing that the evidence is legally
insufficient to support the finding. Hickley v. Couchman, 797 S.W.2d 103, 109 (Tex.
App.-Corpus Christi 1990, writ denied). A legal sufficiency point may be sustained only
when: (1) there is a complete lack of evidence of a vital fact; (2) the record discloses no
more than a mere scintilla of evidence to prove a vital fact; (3) the court is bound by rules
of law or evidence from giving weight to the only evidence offered to prove a vital fact; or
(4) the evidence establishes conclusively the opposite of the vital fact. Hines v. Comm'n
for Lawyer Discipline, 28 S.W.3d 697, 701 (Tex. App.-Corpus Christi 2000, no pet.). 

 We review a legal sufficiency challenge by viewing the evidence in a light that tends
to support the finding of the disputed fact and disregarding all evidence and inferences to
the contrary. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001). When the evidence
offered to prove a vital fact is so weak as to do no more than create a mere surmise or
suspicion of its existence, the evidence is not more than a scintilla and, in legal effect, is
no evidence. Kindred v. Con-Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). The test for
application of this no evidence-scintilla rule is: if reasonable minds cannot differ from the
conclusion, then the evidence offered to support the existence of a vital fact lacks probative
force, and it will be held to be the legal equivalent of no evidence. Id.

 When we review the factual sufficiency of the evidence, we consider, weigh, and
examine all of the evidence which supports or undermines the finding of the trier of fact. 
Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). We review the
evidence, keeping in mind that it is the fact-finder's role to judge the credibility of the
evidence, assign the weight to be given to testimony, and resolve inconsistencies within
or conflicts among witnesses' testimony. Corpus Christi Teachers Credit Union v.
Hernandez, 814 S.W.2d 195, 197 (Tex. App.-San Antonio 1991, no writ). We overturn
findings only if they are so against the great weight and preponderance of the evidence as
to be clearly wrong and unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996).

3. Duty, Breach, and Causation



 In his first three issues, appellant challenges the sufficiency of the evidence
supporting the findings on negligence. Appellees pleaded causes of action for negligence,
negligence per se, and premises liability. Judge Gonzalez granted appellant's motion for
directed verdict on the negligence per se cause of action and appellees' attorney
abandoned the premises liability cause of action. Therefore, we consider only the
negligence cause of action. 

 To prevail on a negligence cause of action, the plaintiff must establish the existence
of a duty, a breach of that duty, and damages proximately caused by the breach. El Chico
Corp. v. Poole, 732 S.W.2d 306, 311 (Tex. 1987). Whether a legal duty exists is a
threshold question of law for the court to decide from the facts surrounding the occurrence
in question. Thapar v. Zezulka, 994 S.W.2d 635, 637 (Tex. 1999); St. John v. Pope, 901
S.W.2d 420, 424 (Tex. 1995); Bird v. W.C.W., 868 S.W.2d 767, 769 (Tex. 1994). A
defendant cannot be found liable for negligence where no duty exists. Thapar, 994 S.W.2d
at 637; Van Horn v. Chambers, 970 S.W.2d 542, 544 (Tex. 1998); Graff v. Beard, 858
S.W.2d 918, 919 (Tex. 1993).

 Appellees' allegations of negligence included numerous acts, but can be separated
into five general categories: (1) failure to have a reasonable safety program; (2) failure to
ensure Flores was tested for bee sting allergy; (3) failure to provide proper protective
equipment and instructions on how to use such equipment; (4) failure to warn Flores of the
dangerousness of honeybees and Africanized bees; and (5) failure to provide Flores with
proper and timely medical attention. We first examine whether the appellees established
a duty to warn of the dangerousness of bees.

 This is a case of first impression in Texas. Courts in other jurisdictions addressing
a beekeeper's liability have generally not applied the common-law rule of absolute liability
that has been applied to the keepers of wild animals. Further, the courts in a number of
cases have expressly held that beekeepers are liable only if they have been found to have
acted negligently. See 3A C.J.S. Animals § 176 (1973); David B. Harrison, Liability for
Injury or Damage Caused by Bees, 86 A.L.R.3d 829 (1978). Hived bees are in that
classification of ferae naturae which have been domesticated. 3A C.J.S. Animals § 176. 
This Court has previously recognized that where a wild animal is domesticated, the owner
is not liable for injuries caused by the domesticated animal unless he "knew that the animal
was accustomed to do mischief, or . . . [he] committed acts of negligence which
proximately caused the injury." Pate v. Yeager, 552 S.W.2d 513, 516 (Tex. Civ.
App.-Corpus Christi 1977, writ ref'd n.r.e.). 

 Deciding whether to impose a common law duty involves complex social and
economic policy considerations. Smith v. Merritt, 940 S.W.2d 602, 604 (Tex. 1997); Graff,
858 S.W.2d at 920. In determining whether to impose such a duty, we conduct a two-part
analysis. Golden Spread Council, Inc. v. Akins, 926 S.W.2d 287, 289-90, 292 (Tex. 1996).

 First, we weigh the risk, foreseeability, and likelihood of injury against the social
utility of the actor's conduct, the magnitude of the burden of guarding against the injury,
and the consequences of placing the burden on the actor. Id.; Greater Houston Transp.
Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990). Of these factors, foreseeability is the
foremost and dominant consideration. Greater Houston Transp., 801 S.W.2d at 525. 
There must be sufficient evidence indicating that the defendant knew or should have
known that harm would eventually befall a victim. Id.; El Chico Corp., 732 S.W.2d at 311. 
Foreseeability requires only that the general danger be foreseeable. Walker v. Harris, 924
S.W.2d 375, 377 (Tex. 1996). Courts may also consider other factors, including whether
one party had superior knowledge of the risk or a right to control the actor who caused the
harm. Golden Spread Council, 926 S.W.2d at 290; Graff, 858 S.W.2d at 920. 

 Second, if we decide that the various factors do not weigh in favor of imposing a
duty, then we examine whether a special relationship exists between the two parties. 
Golden Spread Council, 926 S.W.2d at 292.

 At trial, appellees presented expert testimony pertaining to the foreseeability of this
type of injury. Dr. Dahm, a pathologist who conducted the autopsy of Flores stated: 

[T]here are a few people, who when they get stung by a bee, have a violent
allergic reaction, which is called anaphylaxis. The bee sting causes a chain
reaction of allergic symptoms in the body which leads to massive release all
over the body of compounds that cause severe damage and collapse of the
blood pressure. And this is called anaphylaxis. . . . And this reaction can be
fatal if untreated. It's not terribly common, but by no means rare. It's
frequently seen in hospital emergency rooms and in doctors' offices. 


Similarly, Dr. Mayorga, a physician and expert witness tendered by appellees, testified:

Bees are probably the number one cause of insects deaths [sic] and you
don't have to be an expert to know that in any way, form or fashion because
medically we know for a fact that bee stings is [sic] the number one cause of
death, second, followed by fire ants, . . . we know it's a potential - it's
potentially a hazard for anyone working [with bees].


When asked about the number of patients that he has treated in an attempt to reduce their
likelihood of anaphylactic shock from a bee sting, Dr. Mayorga responded: "I have probably
treated several hundred over my career."

 Appellant himself testified that he was an expert concerning insects, with a degree
in entomology. At the time of this incident, appellant had owned beehives for about five
years and was a member of the Rio Grande Valley Beekeepers Association. Appellant
admitted that he has more knowledge concerning bees than the average person. Finally,
appellant admitted that he knew that a certain percentage of the population is allergic to
bees stings, and that most people who die from bee stings are not aware that they can
suffer anaphylactic shock from the sting. It is undisputed that appellant did not provide any
warning to Black or Flores concerning the dangers associated with bee stings.

 After considering the evidence herein and weighing the risk, foreseeability, and
likelihood of injury from a bee sting against the social utility of the actor's conduct, the
magnitude of the burden of guarding against the injury, and the consequences of placing
the burden on appellant, we hold the evidence is both legally and factually sufficient to
support the jury's finding that appellant had a duty to warn Flores of the dangers
associated with bee stings, including the danger of an adverse allergic reaction, and that
appellant breached that duty. See Golden Spread Council, 926 S.W.2d at 289-90; Pate,
552 S.W.2d at 516. Appellant's first and second issues are overruled.

 To complete a cause of action in negligence, a plaintiff must establish that the
defendant's negligent conduct proximately caused his injuries. El Chico Corp., 732 S.W.2d
at 313. The two elements of proximate cause are cause-in-fact and foreseeability. Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 549 (Tex. 1985). 

 Appellant attacks the second prong of proximate cause, arguing that the risk of
anaphylactic shock from a bee sting is so rare as to make it unforeseeable. An act is
foreseeable if the defendant should have anticipated the dangers that its negligent act or
omission created for others. Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992). 

 As previously noted, expert witnesses testified that anaphylactic shock is not rare
and is a potential risk for anyone who works with bees. Additionally, appellant stated that
he was aware that a certain percentage of the population could suffer from anaphylactic
shock as a result of a bee sting. In light of this evidence, we find the evidence both
factually and legally sufficient to support the jury's verdict that the appellant's failure to
warn of the dangerousness of bees was a proximate cause of Flores's injuries. Appellant's
third issue is overruled.

 Because we have found sufficient evidence to support the jury's findings of
negligence based on appellant's failure to warn of the dangerousness of bees, we need
not examine whether there was sufficient evidence to support the jury's finding on any of
the other allegations of negligence pled by the appellees. Prudential Ins. Co. v. Jefferson
Assocs., 896 S.W.2d 156, 160 (Tex. 1995).

4. Gross Negligence


 In his fourth issue, appellant contends the evidence was insufficient to support the
finding of gross negligence. The applicable definition of "gross negligence" is as follows:

"Gross negligence" means more than momentary thoughtlessness,
inadvertence, or error of judgment. It means such an entire want of care as
to establish that the act or omission in question was the result of actual
conscious indifference to the rights, welfare, or safety of the persons affected
by it. (3)

Comm. on Pattern Jury Charge, State Bar of Texas, Texas Pattern Jury Charges:
General Negligence and Intentional Personal Torts, PJC 4.2A (2002).

 Gross negligence has both an objective and a subjective prong. First, there must
be an entire want of care, which focuses on the objective nature of the actor's conduct. 
Wal-Mart Stores, Inc. v. Alexander, 868 S.W.2d 322, 325 (Tex. 1993). Second, there must
be conscious indifference, which focuses on the subjective nature of the actor's mental
state. Id. In other words, the plaintiff must show that the defendant knew about the peril,
but his acts or omissions demonstrate that he did not care. Burk Royalty Co. v. Walls, 616
S.W.2d 911, 922 (Tex. 1981).

 Appellant argues that the evidence does not support the jury's finding of gross
negligence. Appellees contend the record shows appellant was an entomologist who knew
about the risk of allergic reactions to bee stings, but took no precautions to prevent Flores
from being stung. However, it is undisputed that Flores and the others moving the bee
hives were wearing bee suits. Additionally, there is no evidence appellant knew Flores
was allergic to bee stings. Accordingly, we find that there is no evidence that appellant was
consciously indifferent to Flores's welfare and safety. Appellant's fourth issue is sustained.

5. Flores's Negligence


 In issues five and six, appellant argues the evidence conclusively establishes that
Flores was negligent by removing the protective veil of his bee suit, and that such
negligence was the proximate cause of his being stung. Alternatively, appellant argues the
jury's finding that Flores was not negligent and the finding that Flores's negligence was not
the sole proximate cause of him being stung were against the great weight and
preponderance of the evidence. 

 The evidence reflects that Flores and the others picked up the first hive at
appellant's house and then proceeded to a rural area in Willacy County where they were
going to pick up additional hives. Mercado and Black both testified that upon arriving at
the Willacy County property, Flores had the urge to defecate and excused himself into the
nearby brush. When Flores emerged, he had unzipped his protective veil and was yelling
for help. 

 Although Mercado stated that Flores was not stung at the first hive pick-up, he
stated that Flores was feeling nauseated after they picked up the first hive and before
Flores removed his veil. Both Dr. Dahm and Dr. Mayorga testified that nausea and the
urge to defecate are symptoms of anaphylaxis. Also, Paul Jackson, a state entomologist
and chief apiary inspector, testified that the protective suits were not one hundred percent
effective, and that a bee could sting through a suit. Accordingly, the jury could have
chosen to believe that Flores was stung through his suit at the first hive pick up and was
already exhibiting signs of anaphylaxis prior to removing his protective clothing. 
Accordingly, we hold that the evidence did not conclusively establish that Flores was guilty
of contributory negligence. We hold that the jury's finding that Flores was not negligent is
not against the great weight and preponderance of the evidence. Appellent's fifth and sixth
issues are overruled. 

B. Evidence Concerning Permits


 Appellant complains in his seventh issue that the trial court erred in admitting
evidence of state statutes and regulations relating to the movement of honeybees and
evidence Black had no permit as required by law. Appellant argues that evidence relating
to the lack of a permit was prejudicial because it was offered to show that if the permits had
been issued, Flores would not have been stung. 

 Appellant offers no citations to relevant authority to support his argument that the
evidence was inadmissible. Tex. R. App. P. 38.1(h). As a result of inadequate briefing,
appellant has waived his objections. Id.; Larson v. Family Violence & Sexual Assault
Prevention Ctr., 64 S.W.3d 506, 512 (Tex. App.-Corpus Christi 2001, pet. denied). We
overrule appellant's seventh issue.

C. Damages


 Appellant complains the jury's finding that Flores was entitled to a damage award
of $1,000,000 for pain and mental anguish was against the great weight and
preponderance of the evidence. Appellant argues the award was "clearly excessive."

1. Standard of Review

 The standard of review for an excessive damages complaint is factual sufficiency
of the evidence. Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406 (Tex. 1998);
Volkswagen of Am., Inc. v. Ramirez, 79 S.W.3d 113, 126 (Tex. App.-Corpus Christi 2002,
pet. granted). Appellate courts are not free to substitute their judgment for that of a jury. 
Larson v. Cactus Util. Co., 730 S.W.2d 640, 641 (Tex. 1987). The duty of an appellate
court in determining whether a jury verdict for damages is excessive is to determine
whether: (1) the verdict is unsupported by the evidence, or (2) the verdict is so against the
great weight and preponderance of the evidence as to be manifestly unjust. Pool v. Ford
Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). If we find the evidence sufficient, we are not
at liberty to order a remittitur. Wal-Mart Stores, Inc. v. Odem, 929 S.W.2d 513, 528 (Tex.
App.-San Antonio 1996, writ denied). 

2. Pain and Mental Anguish

 The Texas Supreme Court has emphasized that mental anguish damages cannot
be awarded without direct evidence of the nature, duration, or severity of a plaintiff's
anguish, thus establishing a substantial disruption in the plaintiff's daily routine, or other
evidence of a high degree of mental pain and distress that is more than mere worry,
anxiety, vexation, embarrassment, or anger. Saenz v. Fid. & Guar. Ins. Underwriters, 925
S.W.2d 607, 614 (Tex. 1996). We find from the evidence presented about Flores's
anaphylactic reaction, that the jury could have reasonably concluded that Flores suffered
pain and mental suffering in the span of time between first being stung and passing into
unconsciousness. 

 Consciousness of approaching death is a proper element to be considered in
evaluating mental suffering. See Yowell v. Piper Aircraft Corp., 703 S.W.2d 630, 634-35
(Tex. 1986) ($500,000 awarded to each of four decedents for mental anguish suffered from
the time a plane broke up in mid-air at 10,000 feet until it crashed on the ground); Guzman
v. Guajardo, 761 S.W.2d 506, 512 (Tex. App.-Corpus Christi 1988, writ denied) ($600,000
award affirmed where decedent consciously felt severe pain for at least fifteen minutes
after being struck by truck); Mo. Pac. R.R. Co. v. Lane, 720 S.W.2d 830, 833 (Tex.
App.-Texarkana 1986, no writ) (argument that decedent was apparently killed instantly
fails to consider terror and consequent mental anguish in the six to eight seconds when he
faced imminent death from the train's impending impact with his truck); Hurst Aviation v.
Junell, 642 S.W.2d 856, 859 (Tex. App.-Fort Worth 1982, no writ) ($20,000 mental
anguish damages affirmed for time between mid-air collision and impact with ground;
decedent suffered horror of his impending doom as plane plummeted to earth); Wellborn
v. Sears, Roebuck & Co., 970 F.2d 1420, 1428 (5th Cir. 1992) ($1,000,000 award for pain
and suffering affirmed where experts testified boy struggled to free himself from
underneath a garage door and may have remained conscious for three to five minutes, and
possibly up to several hours, before eventually losing consciousness and dying). 

 Here, Dr. Dahm and Dr. Mayorga described the symptoms of anaphylaxis. These
symptoms included difficulty breathing, swelling of the throat, foaming at the mouth, and
nausea. In addition, testimony showed approximately thirty to fifty minutes passed
between the time Flores first yelled for help and the time he slipped into unconsciousness. 
During that time, his symptoms became progressively worse. This evidence supports the
conclusion that Flores sustained an ever-increasing amount of pain, suffering, fear, and
mental anguish before his death. 

 The jury heard all of the testimony, and it was within its province to judge the
credibility of the witnesses and the weight to be given to their testimony. This is especially
true in claims for mental anguish which are necessarily speculative claims and thus, should
be left to the jury to determine. Wal-Mart Stores, Inc., 929 S.W.2d at 528. Accordingly, we
hold that there is sufficient evidence to support the jury's verdict and that such verdict is
not manifestly unreasonable or unjust. Appellant's eighth issue is overruled. 

D. The Good Samaritan Defense


 In issue nine, appellant argues that he is protected from liability by the Good
Samaritan defense, which states:

A person who in good faith administers emergency care, . . . at the scene of an
emergency but not in a hospital or other health care facility or means of medical
transport is not liable in civil damages for an act performed during the emergency
unless the act is willfully or wantonly negligent.


Tex. Civ. Prac. & Rem. Code Ann. §74.001(a) (Vernon Supp. 2003).

 The Good Samaritan defense does not apply to the present case. Appellant was
not sued for damages resulting from acts that he performed during the emergency; but
rather, he was sued for damages that resulted from those acts he was under a duty to
perform but failed to perform. Appellant's ninth issue is overruled.

III. CONCLUSION

 Having sustained issue four, we reverse that portion of the trial court's judgment
which awards exemplary damages in the amount of $75,000 against appellant for gross
negligence, and we render judgment that appellees recover no exemplary damages. 
Having overruled all other issues, we affirm the remainder of the judgement in all other
respects. 


 

 Rogelio Valdez


Opinion delivered and filed 


this 30th Day of October, 2003













1. En banc review of this decision involves consideration by Chief Justice Valdez and
Justices Yañez and Rodriguez. Justices Hinojosa and Castillo did not participate in the
decision. This case was heard before Justice Garza became a justice on the Court; thus,
Justice Garza did not participate in this decision. Retired Justices Dorsey and Chavez,
who had been assigned to this Court by the Supreme Court of Texas pursuant to section
74.003 of the government code, also did not participate in this decision. See Tex. Gov't
Code Ann. § 74.003 (Vernon 1998). 
2. The order also found Black and his attorney did not receive notice of the judgment
until January 29, 1998.
3. This definition of "gross negligence" applied to causes of action accruing before
September 1, 1995, see Comm. on Pattern Jury Charge, State Bar of Texas, Texas
Pattern Jury Charges: General Negligence and Intentional Personal Torts, PJC
4.2A (2002), and was submitted to the jury in this case.